UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
AHMAD NURIDDINOV,

                        Plaintiff,                           REPORT AND
                                                             RECOMMENDATION

         -against-
                                                             15 CV 5875 (KAM)(RML)

MASADA III, INC., MASADA III
TRANSPORTATION BROKERS, INC., and
MASADA III CAR & LIMO SERVICE CORP.,

                        Defendants.
----------------------------------------------------------X

LEVY, United States Magistrate Judge:

            Plaintiff Ahmad Nuriddinov ("plaintiff") commenced this wage and hour action

on October 13, 2015 against defendants Masada III, Inc. ("Masada III"), Masada III

Transportation Brokers, Inc. ("Masada III Transportation"), and Masada III Car & Limo Service

Corp. ("Masada III Car & Limo") (collectively, "defendants").  (See Complaint, dated Oct. 13,

2015.)  Plaintiff was permitted to file an Amended Complaint on February 27, 2017.  (See

Amended Complaint, dated Feb. 24, 2017 ("Am. Compl."); Order, dated Feb. 27, 2017.)

Defendants failed to answer or otherwise move with respect to the Amended Complaint.  On

April 19, 2017, plaintiff filed a motion for default judgment as to the Amended Complaint (see

Affirmation of Russell E. Adler, Esq. in Support of Plaintiff's Motion for Default Judgment,

dated Apr. 19, 2017 ("Adler Aff.")), which the Honorable Kiyo A. Matsumoto, United States

District Judge, referred to me on April 25, 2017 (see Order, dated Apr. 25, 2017).  For the

reasons explained below, I respectfully recommend that plaintiff's motion be granted as to

defendants Masada III and Masada III Transportation and that default judgments be entered

against those defendants.  However, I respectfully recommend that plaintiff's motion be denied with respect to Masada III Car & Limo.

Regarding damages, I recommend that plaintiff be awarded $9,254.60, consisting of $2,902.30 in unpaid overtime compensation, $1,150 in statutory penalties for wage notice violations, $2,300 in statutory penalties for wage statement violations, and $2,902.30 in liquidated damages under state law.  I further recommend that plaintiff be awarded prejudgment interest on his compensatory damages of $2,902.30 at a rate of nine percent per annum from November 2, 2014 to the date that judgment is entered, as well as post-judgment interest. Finally, I respectfully recommend that plaintiff be awarded $15,750 in attorney's fees and $914.30 in costs.

### BACKGROUND AND FACTS

Plaintiff asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor Law ("NYLL").  (See Am. Compl. ¶¶ 18, 29-42.) According to the uncontested Amended Complaint, defendants operated a car service carrying passengers to destinations throughout the New York tristate area.  (Id. ¶ 10.)  Plaintiff alleges that defendant Masada III is a New York corporation with its principal place of business located at 1319 East 17th Street in Brooklyn, New York, and that defendants Masada III Transportation and Masada III Car & Limo are New York corporations with their principal place of business located at 2078 Pearson Street in Brooklyn, New York.  (Id. ¶¶ 2-5.)  Plaintiff further alleges that all three corporate defendants shared management and ownership.  (Id. ¶ 6.)  Finally, plaintiff alleges that when he was not paid in cash, he was paid by checks drawn against the account of defendant Masada III Transportation (id. ¶ 26), and that the car he drove was registered to defendant Masada III (id. ¶ 27).

According to the Amended Complaint, plaintiff was employed by defendants as a driver from on or about August 12, 2014 until on or about January 23, 2015 (id. ¶ 14), and he was misclassified as an independent contractor but was in fact an employee[1] (see id. ¶¶ 15-16). He claims, inter alia, that defendants failed to: (1) compensate him at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty per workweek (see id. ¶¶ 17, 19, 22, 31-32, 35); (2) compensate him for "spread of hours" premiums for days in which he worked in excess of ten hours in violation of 12 New York Compilation of Codes, Rules & Regulations ("NYCRR") § 142-2.4 (see id. ¶¶ 18-19, 22); and (3) furnish proper wage notices and wage statements as required by the NYLL (id. ¶¶ 20, 40-41).

## PROCEDURAL HISTORY

The complaint initiating this action was properly served on defendants Masada III, Masada III Transportation, and Masada III Car & Limo via the New York Secretary of State on October 20, 2015.  (See Affidavit of Service of Sarah J. Horne, sworn to Oct. 20, 2015); see also N.Y. BUS. CORP. LAW § 306(b)(1).  Defendants initially failed to respond, and on November 13, 2015, the Clerk of the Court entered a certificate of default against defendants for failure to answer or move with respect to the complaint.  (See Certificate of Default, dated Nov. 13, 2015.) On November 18, 2015, defendants, through counsel Irina Saks, filed an answer.  (See Answer, dated Nov. 16, 2015.)  On December 7, 2015, plaintiff filed a fully-briefed motion for default judgment.  (See Motion for Default Judgment, dated Nov. 16, 2015.)  On the same date,

---

[1] Plaintiff demonstrates his employment status by alleging that he: (1) did not own the car he drove for defendants; (2) was not required to provide his own car insurance; (3) did not pay for expenses such as fuel or maintenance; (4) had no opportunity for profit or loss and experienced no loss; (5) was paid a flat fee regardless of hours worked; (6) was subject to the complete direction and control of defendants' dispatchers; (7) was not free to pick up passengers other than those assigned to him by defendants; (8) was economically dependent on defendants for assignments and income; and (9) performed work that was essential to defendants' business. (See Am. Compl. ¶ 16.)

3

defendants filed a cross-motion to set aside the default.  (See Cross-Motion to Set Aside Default, dated Nov. 29, 2015.)  On April 8, 2016, Judge Matsumoto referred those motions to me for a report and recommendation.  (See Order, dated Apr. 8, 2016.)  On April 18, 2016, I held a status conference at which plaintiff withdrew his motion for default judgment, and the parties agreed to engage in settlement discussions and produce settlement-related discovery.  (Minute Entry, dated Apr. 18, 2016.)

On May 23, 2016, plaintiff informed the court that defendants had failed to provide the settlement-related documents agreed upon at the April 18, 2016 status conference. (Minute Entry, dated May 23, 2016.)  On June 8, 2016, the parties appeared before me, and defendants' counsel Maxsim Leyvi reported that his clients had effectively discharged him.  (See Minute Entry, dated June 8, 2016.)  Accordingly, on June 20, 2016, I granted Mr. Leyvi's motion to withdraw.  (See Motion to Withdraw, dated June 14, 2016; Affirmation of Maksim Leyvi, filed June 14, 2016; Order, dated June 20, 2016.)  Defendants indicated that they did not intend to retain new counsel despite warnings from outgoing counsel that corporations cannot represent themselves in federal court and a warning from the court on June 20, 2016 that failure to obtain counsel within thirty days would result in a finding of default.  (Order, dated June 20, 2016; Affidavit of Service of Dorina Shavzina, sworn to June 21, 2016.)  On July 28, 2016, I issued a Report and Recommendation recommending that default judgments be entered against defendants.  (See Report and Recommendation, dated July 28, 2016.)  On August 15, 2016, Judge Matsumoto adopted the Report and Recommendation and entered default judgments against defendants.  (See Order, dated Aug. 15, 2016.)

On August 18, 2016, plaintiff filed his second motion for default judgment.  (See Affirmation of Russell E. Adler, Esq. in Support of Default Judgment, dated Aug. 18, 2016.)

Judge Matsumoto referred the motion to me on October 7, 2016. (See Order, dated Oct. 7, 2016.)

On November 29, 2016, I held a damages hearing at which plaintiff testified. (See Minute Entry, dated Nov. 29, 2016.) Despite notice of the hearing, defendants did not appear and have not otherwise communicated with the court since counsel's withdrawal.

On February 22, 2017, I ordered plaintiff to show cause on or before March 2, 2017 as to why his pending motion should not be denied and the complaint dismissed for lack of subject matter jurisdiction. (See Order to Show Cause, dated Feb. 22, 2017.) Plaintiff's complaint failed to allege that plaintiff was either (1) engaged in interstate commerce or in the production of goods for interstate commerce, or (2) employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce. (Id.); see also 29 U.S.C. § 203(s)(1). Plaintiff was further directed to address the factual basis for holding all three defendants liable as joint employers or as a single enterprise. (Id.) On February 24, 2017, plaintiff moved to amend the complaint. (See Motion to Amend the Complaint, dated Feb. 24, 2017.) On February 27, 2017, I granted the motion to amend and advised plaintiff that the pending motion for default judgment would be terminated as moot with leave to renew in the event that defendants again defaulted. (See Order, dated Feb. 27, 2017.)

Plaintiff properly served the Amended Complaint on defendants via the New York Secretary of State on March 6, 2017. (See Affidavit of Service of Sarah J. Horne, sworn to Mar. 6, 2017); see also N.Y. Bus. Corp. Law § 306(b)(1). Defendants again failed to answer. (See Order, dated Apr. 13, 2017.)

On April 19, 2017, plaintiff filed the instant motion for default judgment. He requests a total damage award of $79,522.80, exclusive of interest. (See Adler Aff. ¶ 24.)

**DISCUSSION**

A.  Legal Standard

It is well settled that a party's default "is deemed to constitute a concession of all well pleaded allegations of liability . . . ."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)); see also Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  Nonetheless, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases); see also Au Bon Pain, 653 F.2d at 65 (explaining that the district court "need not agree that the alleged facts constitute a valid cause of action"); Rolls-Royce PLC v. Rolls-Royce USA Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) ("[A]fter default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.") (internal citation, quotation marks, and ellipses omitted).

Furthermore, a party's default "is not considered an admission of damages." Greyhound, 973 F.2d at 158 (citing Flaks, 504 F.2d at 707); see also Au Bon Pain, 653 F.2d at 65 ("[A]t the inquest, the court should have accepted as true all of the factual allegations of the complaint, except those relating to damages.").  Therefore, "[i]f the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'"  Gunawan, 897 F. Supp. 2d at 83 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  Additionally, because it is the employer's obligation to maintain employment records, "[w]hen a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours are presumed to be correct."

6

Id. (citing Chun Jie Yin v. Kim, No. 07 CV 1236, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008); see also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946).

### B. Liability

Plaintiff asserts one claim for unpaid overtime compensation pursuant to the FLSA, 29 U.S.C. § 207(a).  (See Am. Compl. ¶¶ 29-34.)  Plaintiff further brings claims pursuant to the NYLL for: (1) unpaid overtime compensation, N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2; (2) unpaid "spread of hours" premiums, N.Y. COMP. CODES R. & REGS. tit. 12 § 142-2.4; and (3) failure to furnish wage notices and wage statements, N.Y. LAB. LAW §§ 195(1), (3). (See Am. Compl. ¶¶ 18, 35-42.)

Liability under the FLSA must be predicated either on the individual employee's engagement in interstate commerce or the employer's status as an enterprise engaged in interstate commerce whose annual gross volume of sales made or business done is not less than $500,000.  See 29 U.S.C. § 203(s)(1).  Additionally, liability for unpaid overtime compensation under the FLSA and for the alleged NYLL violations requires a showing that the plaintiff is employed as defined by those statutes – i.e., the plaintiff must qualify as an "employee" and each defendant must qualify as an "employer" under the statutes.  See 29 U.S.C. §§ 203(d), (e); N.Y. LAB. LAW § 190(2).

### 1. FLSA Enterprise Coverage

Plaintiff must sufficiently allege that defendants were an "enterprise engaged in commerce or in the production of goods for commerce" within the applicable statutory definition, 29 U.S.C. § 203(s)(1).  Here, plaintiff alleges that defendants' drivers frequently carried passengers to destinations outside the state of New York (see Am. Compl. ¶ 10), and that

defendants' gross volume of sales exceeded $500,000 annually (see id. ¶ 13).  Accordingly, I conclude that plaintiff's complaint establishes enterprise coverage under the FLSA.

2.  Plaintiff's Status as an Employee

In order to recover under the FLSA, plaintiff must show that he is qualified for protection under the federal statute as an "employee."  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 31-32 (E.D.N.Y. 2015).  The FLSA broadly defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); Saleem v. Corp. Transp. Grp., Ltd., 854 F.3d 131, 139 (2d Cir. 2017).  To "employ" includes "suffer[ing] or permit[ing] to work."  29 U.S.C. § 203(g); Saleem, 854 F.3d at 139.

Whether a worker is an employee or an independent contractor under the FLSA ultimately depends on the "economic reality" of the relationship.  Saleem, 854 F.3d at 139.  The question is "whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves."  Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988).  The factors set out in United States v. Silk, 331 U.S. 704 (1947), are relevant to the determination, but the Second Circuit has cautioned against the "'mechanical application'" of these factors.  See Saleem 854 F.3d at 140 (quoting Superior Care, 840 F.2d at 1059).  Relevant factors include:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

Superior Care, 840 F.2d at 1058-59 (citing Silk, 331 U.S. at 716).

The Silk factors are exemplary, not exclusive, and any other relevant evidence bearing on the economic reality of the relationship may be considered.  Id. at 1059.  Thus, the

contractual label of a worker as an "independent contractor" may be relevant where it demonstrates or suggests a degree of independence on the part of the worker.  See Saleem, 854 F.3d at 141.  However, the independent contractor label is not dispositive and may be irrelevant in light of the nature of the employment.  See Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 729-30 (1947)); see also Superior Care, 840 F.2d at 1059 ("[A]n employer's self-serving label of workers as independent contractors is not controlling[.]")

Similarly, in order to recover for his state law claims plaintiff must show that he is an "employee" under the NYLL.  See Short v. Churchill Benefit Corp., No. 14 CV 4561, 2016 WL 8711349, at *8 n.21 (E.D.N.Y. Apr. 8, 2016) (citing Hernandez v. Chefs Diet Delivery, LLC, 915 N.Y.S.2d 623, 624 (2d Dep't 2011)).  The NYLL's definition of "employee" includes "any person employed for hire by an employer in any employment."  See N.Y. LAB. LAW § 190(2); Short, 2016 WL 8711349, at *8 n.21.  This definition, though broad, excludes independent contractors.  See Akgul v. Prime Time Transp., Inc., 741 N.Y.S.2d 553, 556 (2d Dep't 2002).

The standard for differentiating between an independent contractor and an employee under the NYLL is similar to that under the FLSA, but the focus is on the degree of control exercised by the alleged employer rather than the economic reality of the situation.  Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009).  The relevant factors for this inquiry are "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule."  Bynog v. Cipriani Grp., Inc., 802 N.E.2d 1090, 1093 (N.Y. 2003).

Here, plaintiff's uncontroverted complaint alleges, inter alia, that he was subject to the complete direction and control of defendants' dispatchers, was not free to pick up passengers other than those assigned to him by defendants, drove a car that was owned and paid for by defendants (including insurance costs, fuel, and maintenance), had no opportunity for profit or loss, and generally performed work that was essential to defendants' business.  (See Am. Compl. ¶ 16.)  Although plaintiff was designated as an independent contractor (see id. ¶ 15), he has alleged sufficient facts to demonstrate that he was dependent upon defendants' business rather than in business for himself and is thus an employee under the FLSA.  See Superior Care, 840 F.2d at 1059.  Similarly, the degree of control the employer allegedly exercised and plaintiff's lack of discretion in performing his work qualify him as an employee under the NYLL.  See Bynog, 802 N.E.2d at 1093.

3.   Defendants' Status as Employers

Plaintiff must also allege facts sufficient to demonstrate that defendants are "employers" under the broad definitions of the FLSA and NYLL.  See Morangelli v. Chemed Corp., 922 F. Supp. 2d 278, 284 (E.D.N.Y. 2013).  The New York Court of Appeals has not officially determined whether the NYLL's standard for employer status is identical to the FLSA's.  Irizarry, 722 F.3d at 117.  However, courts in this Circuit regularly apply functionally identical tests to determine employer status under both the FLSA and NYLL.  See, e.g., Bedasie v. Mr. Z Towing, Inc., No. 13 CV 5453, 2017 WL 1135727, at *16 (E.D.N.Y. Mar. 24, 2017); Sethi v. Narod, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) (collecting cases); Morganelli, 922 F. Supp. 2d at 284.

Some courts in this Circuit have held that multiple corporate entities may be jointly and severally liable under the FLSA and NYLL pursuant to a "single integrated

10

enterprise" theory.  See Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc., No. 14 CV

5269, 2016 WL 5092588, at *16 (E.D.N.Y. Sept. 19, 2016); Garcia v. Chirping Chicken NYC,

Inc., No. 15 CV 2335, 2016 U.S. Dist. LEXIS 32750, at *20 (E.D.N.Y. Mar. 31, 2016).

Alternatively, it is well established that two or more entities or individuals may be liable as joint

employers.  See 29 C.F.R. § 791.2.  Plaintiff's Amended Complaint characterizes the three

defendants as part of a single enterprise.  (See Am. Compl. ¶ 6 ("[Defendants] operated as a

single enterprise.").)  Thus, I analyze the liability of each of the three entities first under the

single integrated enterprise theory and then discuss whether any entity not covered under that

theory can be considered liable as a joint employer.

> i.  Single Integrated Enterprise

Under the "single integrated enterprise" doctrine, multiple defendants may be

jointly and severally liable for FLSA and NYLL violations.  Ayala, 2016 WL 5092588, at *16;

see also Chirping Chicken, 2016 U.S. Dist. LEXIS 32750, at *20; Perez v. Westchester Foreign

Autos, Inc., No. 11 CV 6091, 2013 WL 749497, at *7 (S.D.N.Y Feb. 28, 2013).  The Second

Circuit has applied the single integrated enterprise doctrine in the context of other labor and

employment statutes, see, e.g., Levine v. Reader's Digest Ass'n, Inc., 347 F. App'x 602, 603 (2d

Cir. 2009) (Age Discrimination in Employment Act); Arculeo v. On-Site Sales & Mktg., LLC,

425 F.3d 193, 197 (2d Cir. 2005) (Title VII); Lihli Fashions Corp. v. N.L.R.B., 80 F.3d 743, 747

(2d Cir. 1996), as amended (May 9, 1996) (National Labor Relations Act), but has not expressly

held that the doctrine applies to FLSA cases.  See Teri v. Spinelli, 980 F. Supp. 2d 366, 372 n.12

(E.D.N.Y. 2013) (citing Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 940 n.16

(S.D.N.Y. 2013)).  Nonetheless, district courts in this Circuit have frequently held that, where

plaintiffs demonstrate that the four-factor test detailed infra is satisfied, multiple entities can be

held liable as a single employer under the FLSA.  See, e.g., Ayala, 2016 WL 5092588, at *16;

Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12 CV 5565, 2016 WL 4179942, at *5

(E.D.N.Y. Aug. 5, 2016); Yap v. Mooncake Foods, Inc., 146 F. Supp. 3d 552, 557 (S.D.N.Y.

2015); Lopez v. Pio Pio NYC, Inc., No. 13 CV 4490, 2014 WL 1979930, at *3–4 (S.D.N.Y. May

15, 2014); Perez, 2013 WL 749497, at *7; Morangelli, 922 F. Supp. 2d at 285; Addison v.

Reitman Blacktop, Inc., 283 F.R.D. 74, 84 (E.D.N.Y. 2011).  "Absent a clear resolution of this

issue, district courts have discretion to consider the theory because the Second Circuit 'has

treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case

basis by review of the totality of the circumstances.'"  Lopez, 2014 WL 1979930, at *3 (quoting

Barfield v. N.Y.C. Health & Hosps. Corp, 537 F.3d 132, 141-42 (2d Cir. 2008)).

        The four-factor test courts use to determine single enterprise liability analyzes the

extent of: "(1) the interrelation of operations, (2) centralized control of labor relations, (3)

common management, and (4) common ownership or financial control."  Chirping Chicken,

2016 U.S. Dist. LEXIS 32750, at *20.  Courts in this district have employed this doctrine to find

defaulting defendants liable for FLSA and NYLL claims.  See Coley, 2016 WL 4179942, at *5;

Chirping Chicken, 2016 U.S. Dist. LEXIS 32750, at *21-22.  In the context of a default, liability

may be established based on limited detail about the relationship of defendants.  See, e.g.,

Chirping Chicken 2016 U.S. Dist. LEXIS 32750, at *21-22 (holding defendants – two

corporations and an individual – liable as a single employer where the complaint alleged that

"defendants are involved in the same industry, are located at the same addresses, and are wholly

owned and operated by defendant Dass" and plaintiffs' declarations made further claims about

the integrated nature of the entities).  However, demonstrating common management and

ownership, without more, is insufficient to establish single employer status.  See Morangelli, 922 F. Supp. 2d at 286.

Here, plaintiff alleges that defendants had the same management and ownership. (Am. Compl. ¶ 6.)  Plaintiff also alleges that defendant Masada III Transportation paid him on the occasions he was paid by check (id. ¶ 26), and he further alleges that the car he drove was registered to Masada III (id. ¶ 27).  Plaintiff thus establishes that, beyond common management and ownership, these two entities were interrelated in their operations and acted as a centralized unit that provided plaintiff with the vehicle required for his work and compensated him.  Thus, I recommend that Masada III Transportation and Masada III be held liable as a single integrated employer.

As to Masada III Car & Limo, plaintiff alleges that this entity shared a principal place of business with Masada Transportation (id. ¶¶ 4-5), but alleges no other facts that demonstrate that this entity's operations were interrelated with defendants or that they were part of a common enterprise with centralized control over labor relations.  All that is established by the Amended Complaint is that Masada III Car & Limo shared management, ownership, and an address with the other defendants.  (Id. ¶¶ 4-6.)  These facts are insufficient to demonstrate that Masada III Car & Limo should be liable as part of single integrated enterprise.[2]

---

[2] These bare allegations amount to less than the facts established by the complaint and declarations in Garcia v. Chirping Chicken NYC, Inc., which the court found sufficient to establish a single integrated enterprise.  There, plaintiffs' declarations established that the two corporate defendants had interrelated business and operated as a single unit with regard to labor relations.  See Chirping Chicken, 2016 U.S. Dist. LEXIS 32750, at *21.  Plaintiffs in that case alleged that "both defendants maintain the same address, owners, management, personnel, equipment, and still serve American style food. . . . [D]efendant Dass dominated the day-to-day operations of Chirping Chicken and had complete control of the alleged activities of Chirping Chicken."  Id. (internal quotations and citations omitted).  No analogous facts regarding employees or operations are alleged here.  On this record, there are insufficient allegations to

Continued . . .

ii.  Joint Employers

Masada III Car & Limo also cannot be held liable as a joint employer.  Pursuant to the regulations promulgated under the FLSA, an employee may be jointly employed by two or more employers.  See 29 C.F.R. § 791.2.  Whether a defendant is an employer hangs on the "economic reality" of the relationship.  Bedasie, 2017 WL 1135727, at *16 (citing Herman, 172 F.3d at 139).  The economic reality test assesses whether each putative employer had either formal or functional control over the employee.  See Lopez, 2014 WL 1979930, at *2.

Factors that tend to establish that an employer had formal control include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).  Factors that suggest functional control include:

> (1) whether the alleged employer's premises and equipment were used for the Plaintiffs' work; (2) whether Plaintiffs shifted from one putative joint employer's premises to that of another; (3) the extent to which the work performed by Plaintiffs was integral to the overall business operation; (4) whether Plaintiffs' work responsibilities remained the same regardless of where they worked; (5) the degree to which the alleged employer or its agents supervised Plaintiffs' work, and (6) whether Plaintiffs worked exclusively or predominantly for one Defendant.

Lopez, 2014 WL 1979930, at *2 (internal quotation marks and citation omitted); see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 71-72 (2d Cir. 2003).

The Amended Complaint fails to include any detail about the role of Masada III Car & Limo in relation to plaintiff.  The entity shared an address with Masada III Transportation, and allegedly had the same management and ownership.  (Am. Compl. ¶¶ 5, 6.)  I have already

consider Masada III Car & Limo as part of a single integrated enterprise with defendants Masada III Transportation and Masada III.

concluded supra that plaintiff's allegation that all three entities "operated as a single enterprise" (id. ¶ 6) is insufficiently supported as to Masada III Car & Limo.  In the absence of any specific factual allegations, plaintiff fails to demonstrate that Masada III Car & Limo exerted any formal or functional control over plaintiff's employment.  Thus, I respectfully recommend that plaintiff's motion be denied with respect to Masada III Car & Limo.

          4.   NYLL Spread-of-Hours Premiums

        In addition to his overtime claim, plaintiff alleges that defendants denied him spread-of-hours premiums as required by 12 NYCRR § 142-2.4.  (See Am. Compl. ¶ 18.)  12 NYCRR § 142-2.18 defines "spread of hours" as "the interval between the beginning and end of an employee's workday," and indicates that "[t]he spread of hours for any day includes working time plus time off for meals plus intervals of duty."  N.Y. COMP. CODES R. & REGS. tit. 12 § 142-2.18.  Employees are entitled to one hour's pay at the basic minimum hourly wage rate, in addition to their standard compensation, for every day on which they work more than ten hours.  See id. § 142-2.4.  However, the weight of authority in this Circuit holds that "[a] limitation upon a plaintiff's eligibility to recover for spread-of-hours pay is that the plaintiff not earn more than minimum wage."  Luna v. Gon Way Contr., No. 16 CV 480, 2017 WL 835321, at *11 (E.D.N.Y. Feb. 14, 2017), adopted by 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017); see also Tan v. Voyage Express Inc., No. 15 CV 6202, 2017 WL 2334969, at *1 (E.D.N.Y. May 25, 2017) (collecting cases); Leon v. Zita Chen, No. 16 CV 480, 2017 WL 1184149, at *7 (E.D.N.Y. Mar. 29, 2017) ("Courts, however, have given deference to the New York State Department of Labor's interpretation that spread-of-hours does not apply to an employee whose workday is in excess of ten hours if his or her total daily compensation exceeds the New York State Minimum wage

multiplied by the number of hours he or she worked plus one additional hour at the minimum wage.")

As discussed <u>infra</u>, plaintiff's hourly rate, calculated on a weekly basis, never fell below $9.00.  Thus, his daily compensation was always greater than the state minimum wage rate plus one additional hour.[3]  Accordingly, I find that plaintiff is not entitled to unpaid spread-of-hours premiums.

     5.  <u>NYLL Statutory Penalties</u>

Finally, plaintiff alleges that defendants failed to furnish him with a statement with every payment of wages listing the wage information prescribed by NYLL § 195(3).  (Am. Compl. ¶¶ 23, 40-41.)  Plaintiff further alleges that defendants failed to furnish notices at the time of hiring listing the information set forth in § 195(1).  (<u>Id.</u>)  These uncontroverted allegations state claims for relief pursuant to the NYLL.

     C.  <u>Damages</u>

     1.  <u>Unpaid Wages and Overtime</u>

As noted <u>supra</u>, "when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the plaintiff's recollection and estimates of hours worked are presumed to be correct." <u>Gunawan</u>, 897 F. Supp. 2d at 88 (internal quotation marks and citations omitted); <u>see also</u> <u>Kim</u>, 2015 WL 2222438, at *25 (explaining that, where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that

---

[3] During plaintiff's employment period, the New York State minimum wage was $8.00 per hour prior to December 31, 2014 and $8.75 on and after December 31, 2014.  <u>See</u> N.Y. Lab. Law § 652.

work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart, 60 F. Supp. 3d at 466 ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

        Plaintiff is entitled to overtime compensation under both the FLSA and NYLL at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.  The "regular rate" an employee is paid "must be drawn from what happens under the employment contract."  29 C.F.R. § 778.108.  "'In the absence of any written instrument memorializing the parties' intentions, the Court must infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record.'"  Chopen v. Olive Vine, Inc., No. 12 CV 2269, 2015 WL 1514390, at *6 (E.D.N.Y. Mar. 13, 2015), adopted as modified by 2015 WL 1542082 (E.D.N.Y. Mar. 31, 2015) (quoting Moon v. Kwon, 248 F. Supp. 2d 201, 206 (S.D.N.Y. 2002)).

        At the inquest hearing, plaintiff testified that he was paid $120 for every day worked.  (See Transcript of Proceedings held on Nov. 29, 2016, filed Dec. 30, 2016 ("Tr."), at 7.)  The Amended Complaint similarly alleges that plaintiff was paid "a flat fee of $120 per day, regardless of his hours worked."  (Am. Compl. ¶ 16.)  Plaintiff was given a daily schedule that varied both in duration and start and end time from day to day.  (See Court Exhibit 1 from Nov. 29, 2016 hearing, filed Nov. 29, 2016 ("Time Records").)  He was consistently compensated for the varying hours he worked at a rate of $120 per day.[4]  (See Am. Compl. ¶ 16; Tr. at 7.)

---

[4] In the affirmation supporting plaintiff's motion for default judgment, plaintiff's attorney asserts that plaintiff's $120 daily rate was "subject to deductions taken in Defendants' sole discretion, thus, Plaintiff did not receive a set salary every week and his compensation varied on a weekly basis."  (Adler Aff. ¶ 9.)  The alleged deductions are not mentioned in plaintiff's Amended Complaint; nor was there any evidence of deductions presented at the inquest hearing.  Absent

Continued . . .

17

To calculate the overtime wages due to plaintiff, it is necessary to determine his regular rate of pay.  "If the employee is paid a flat sum for a day's work . . . without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked."[5]  29 C.F.R. § 778.112; see Chen v. JP Standard Constr. Corp., No. 14 CV 1086, 2016 WL 2909966, at *9 (E.D.N.Y. Mar. 18, 2016), adopted by 2016 WL 2758272 (E.D.N.Y. May 12, 2016).

Therefore, I have calculated plaintiff's regular hourly rate on a week-by-week basis for every workweek (Monday – Sunday) he worked for defendants.[6]  By multiplying plaintiff's daily rate ($120) by the number of days worked, I have calculated his actual weekly compensation ("Actual Pay Received").  By dividing his Actual Pay Received by the number of hours worked in that week based on the evidence provided in plaintiff's time records (see Time Records)[7], I have calculated his lawful hourly rate and multiplied that number by 1.5 to get the

---

evidence of instances where defendants reduced plaintiff's daily rate, the court assumes that plaintiff received a daily rate of $120 for every day worked, as established by his testimony. (See Tr. at 7.)

[5] A similar formula is required by the NYLL.  See N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.16.  Therefore, the weekly regular and overtime rates for both FLSA and NYLL purposes are calculated by totaling the amount of compensation per week and dividing by the hours worked in that week.

[6] Plaintiff's attorney based his damages calculations on an hourly wage of $15, calculated by dividing his daily rate of $120 by eight hours.  (Adler Aff. ¶ 14.)  As discussed supra, plaintiff has not provided documentary or testimonial evidence of an agreement or intention for $120 to compensate plaintiff for only an eight-hour workday.  Rather, plaintiff's testimony at the inquest hearing and his Amended Complaint both represent that he received a flat daily rate of $120. (See Tr. at 7; Am. Compl. ¶ 16.)

[7] The time records provided by plaintiff list scheduled pickup times throughout the day.  Each day's hours worked are calculated from the first scheduled pickup to the last scheduled pickup, with 1.5 hours added to account for travel time between plaintiff's last pickup and return to

Continued . . .

lawful hourly overtime rate for each week.  For weeks plaintiff worked more than forty hours,

the lawful hourly rate is multiplied by forty and the lawful overtime rate is multiplied by the

number of hours worked over forty, with the sum of those numbers equaling the pay plaintiff

was lawfully due based on his rate that week.  Subtracting the pay lawfully due from the pay

actually received shows the unpaid wages that plaintiff is owed.  As illustrated in the appended

chart, this results in an award of $2,902.30.

| Workweek | Days | Actual Pay Received | Hours Worked | Lawful Hourly Rate | Lawful Straight Time Pay Due | OT Hours | Lawful OT Rate | Lawful OT Pay Due | Total Lawful Pay Due | Unpaid Wages Owed |
|---|---|---|---|---|---|---|---|---|---|---|
| 8.11.14 - 8.17.14 | 6 | $720.00 | 77.72 | $9.26 | $370.56 | 37.72 | $13.90 | $524.16 | $894.72 | $174.72 |
| 8.18.14 - 8.24.14 | 7 | $840.00 | 85.76 | $9.79 | $391.79 | 45.76 | $14.69 | $672.31 | $1,064.10 | $224.10 |
| 8.25.14 - 8.31.14 | 5 | $600.00 | 59.75 | $10.04 | $401.67 | 19.75 | $15.06 | $297.49 | $699.16 | $99.16 |
| 9.1.14 - 9.7.14 | 6 | $720.00 | 72.22 | $9.97 | $398.78 | 32.22 | $14.95 | $481.83 | $880.61 | $160.61 |
| 9.8.14 - 9.14.14 | 5 | $600.00 | 65.04 | $9.23 | $369.00 | 25.04 | $13.84 | $346.49 | $715.50 | $115.50 |
| 9.15.14 - 9.21.14 | 7 | $840.00 | 92.34 | $9.10 | $363.87 | 52.34 | $13.65 | $714.19 | $1,078.06 | $238.06 |
| 9.22.14 - 9.28.14 | 4 | $480.00 | 53.33 | $9.00 | $360.02 | 13.33 | $13.50 | $179.97 | $539.99 | $59.99 |
| 9.29.14 - 10.5.14 | 3 | $360.00 | 39.03 | $9.22 | $360.00 | 0.00 | $13.84 | $0.00 | $360.00 | $0.00 |
| 10.6.14 - 10.12.14 | 7 | $840.00 | 90.56 | $9.28 | $371.02 | 50.56 | $13.91 | $703.46 | $1,074.49 | $234.49 |
| 10.13.14 - 10.19.14 | 5 | $600.00 | 65.50 | $9.16 | $366.41 | 25.50 | $13.74 | $350.38 | $716.79 | $116.79 |
| 10.20.14 - 10.26.14 | 5 | $600.00 | 64.70 | $9.27 | $370.94 | 24.70 | $13.91 | $343.59 | $714.53 | $114.53 |
| 10.27.14 - 11.2.14 | 4 | $480.00 | 52.95 | $9.07 | $362.61 | 12.95 | $13.60 | $176.09 | $538.70 | $58.70 |
| 11.10.14 – 11.16.14 | 1 | $120.00 | 10.50 | $11.41 | $120.00 | 0.00 | $17.11 | $0.00 | $120.00 | $0.00 |
| 11.17.14 - 11.23.14 | 7 | $840.00 | 86.80 | $9.68 | $387.10 | 46.80 | $14.52 | $679.35 | $1,066.45 | $226.45 |
| 11.24.14 - 11.30.14 | 4 | $480.00 | 50.92 | $9.43 | $377.06 | 10.92 | $14.14 | $154.41 | $531.47 | $51.47 |
| 12.1.14 - 12.7.14 | 6 | $720.00 | 76.16 | $9.45 | $378.15 | 36.16 | $14.18 | $512.77 | $890.92 | $170.92 |

Masada at the end of each work day.  (See Tr. at 6.)  Plaintiff testified that he took no lunch
break.  (Id. at 8.)

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 12.8.14 - 12.14.14 | 7 | $840.00 | 91.20 | $9.21 | $368.42 | 51.20 | $13.82 | $707.37 | $1,075.79 | $235.79 |
| 12.15.14 - 12.21.14 | 6 | $720.00 | 78.09 | $9.22 | $368.81 | 38.09 | $13.83 | $526.79 | $895.60 | $175.60 |
| 12.22.14 - 12.28.14 | 3 | $360.00 | 36.21 | $9.94 | $360.00 | 0.00 | $14.91 | $0.00 | $360.00 | $0.00 |
| 12.29.14 - 1.4.15 | 6 | $720.00 | 76.27 | $9.44 | $377.61 | 36.27 | $14.16 | $513.59 | $891.20 | $171.20 |
| 1.5.15 - 1.11.15 | 5 | $600.00 | 60.14 | $9.98 | $399.07 | 20.14 | $14.97 | $301.40 | $700.47 | $100.47 |
| 1.12.15 - 1.18.15 | 5 | $600.00 | 64.55 | $9.30 | $371.80 | 24.55 | $13.94 | $342.29 | $714.10 | $114.10 |
| 1.19.15 - 1.25.15 | 4 | $480.00 | 53.23 | $9.02 | $360.70 | 13.23 | $13.53 | $178.95 | $539.65 | $59.65 |

| Total Wages Owed: | $2,902.30 |
|---|---|

### 2.   Statutory Penalties Under the NYLL

Plaintiff states that he never received wage notices or wage statements in compliance with the NYLL.  (See Am. Compl. ¶¶ 23, 40-41; see also Tr. at 3.)  At the time plaintiff was employed by defendants, New York's Wage Theft Prevention Act ("WTPA") required employers to provide written wage notices "at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer."  N.Y. LAB. LAW § 195(1-a) (eff. Apr. 9, 2011 to Feb. 27, 2015).  During this time, "the WTPA entitled employees to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500."  Baltierra v. Advantage Pest Control Co., No. 14 CV 5917, 2015 WL 5474093, at *11 (S.D.N.Y. Sept. 18, 2015); see also 2010 N.Y. Laws ch. 564 § 7, amending N.Y. LAB. LAW § 198(1-b).  As plaintiff's employment period was twenty-three weeks, I respectfully recommend that he be awarded $1,150 for defendants' wage notice violations.

With respect to damages for defendants' failure to provide wage statements, prior to February 27, 2015, "the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500."  Baltierra,

20

2015 WL 5474093, at *10 (citation omitted); accord Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 501 (S.D.N.Y. 2015); see also 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Lab. Law § 198(1-d).  Thus, I respectfully recommend that plaintiff be awarded $2,300 for defendants' failure to provide wage statements during his twenty-three weeks of employment.

### 3.  Liquidated Damages

Plaintiff requests discrete liquidated damage awards under both the FLSA and the NYLL.  The liquidated damage provisions of the two statues mirror each other and allow for additional recovery of one-hundred percent of the wages due.  See 29 U.S.C. § 260; N.Y. Lab. Law § 663(1); Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016) (summary order).  However, plaintiff cannot recover liquidated damages under both statutes. See Chowdhury, 666 F. App'x at 60 ("New York's law does not call for an award of New York liquidated damages over and above a like award of FLSA liquidated damages.")  Plaintiff's recovery under the NYLL will be greater because plaintiff can recover both liquidated damages and pre-judgment interest under the NYLL but not under the FLSA.[8]  See N.Y. Lab. Law § 663. Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith."  Zubair v. EnTech Eng'g, P.C., 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012).  As defendants have defaulted, they have not established good faith to rebut the presumption.  I therefore recommend that plaintiff be awarded $2,902.30 in liquidated damages.

### 4.  Prejudgment Interest

Plaintiff also requests and is entitled to prejudgment interest under the NYLL. See N.Y. Lab. Law § 663; Fermin, 93 F. Supp. 3d at 48 ("In contrast to the FLSA, the NYLL

---

[8] "When confronted with the choice whether to award liquidated damages under the NYLL or the FLSA, the court should choose whichever statute provides the higher award." Khan v. Party Pizza Inc., No. 15 CV 3470, 2016 WL 4597479, at *5 (E.D.N.Y. Aug. 16, 2016), adopted by 2016 WL 4596001 (E.D.N.Y. Sept. 2, 2016).

permits an award of both liquidated damages and pre-judgment interest."). "'Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law.'" <u>Fermin</u>, 93 F. Supp. 3d at 49 (quoting <u>Mejia v. East Manor USA Inc.</u>, No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), <u>adopted by</u> 2013 WL 2152176 (May 17, 2013)) (internal brackets removed).

The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date.  <u>Id.</u> § 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest.  <u>See</u> <u>Jaramillo v. Banana King Rest. Corp.</u>, No. 12 CV 5649, 2014 WL 2993450, at *8 (E.D.N.Y. June 30, 2015); <u>Fermin</u>, 93 F. Supp. 3d at 49.  I determine the midpoint of plaintiff's employment to be November 2, 2014.  Accordingly, I respectfully recommend that plaintiff be awarded prejudgment interest on his compensatory damages of $2,902.30, calculated at a rate of nine percent per annum from November 2, 2014 to the date that judgment is entered.

5.   <u>Post-judgment Interest</u>

Plaintiff is also entitled to an award of post-judgment interest.  28 U.S.C. § 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment"  <u>Id.</u>  Thus, I respectfully recommend that plaintiff be awarded statutory post-judgment interest.  <u>See</u> <u>Fermin</u>, 93 F. Supp. 3d at 53 (finding that post-judgment interest is mandatory).

22

6.  <u>Attorney's Fees & Costs</u>

i.  <u>Fees</u>

Plaintiff requests an award of $23,335 in attorney's fees.  Both the FLSA and

NYLL provide for recovery of reasonable attorney's fees.  <u>See</u> 29 U.S.C. § 216(b); N.Y. Lab.

Law § 663.  An application for attorney's fees must be supported by "contemporaneous time

records" that "specify, for each attorney, the date, the hours expended, and the nature of the work

done."  <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d

Cir. 1983).  Plaintiff's counsel has complied with the requirement.  (<u>See</u> Contemporaneous

Billing Records, filed Apr. 19, 2017 ("Att'y Time Records"), annexed as Ex. A to Adler Aff.)

In calculating a fee award, the court must first establish a reasonable hourly rate,

which is "what a reasonable, paying client would be willing to pay."  <u>Arbor Hill Concerned</u>

<u>Citizens Neighborhood Ass'n v. Cty. of Albany</u>, 522 F.3d 182, 184 (2d Cir. 2008).  The

reasonable hourly rates should be based on "rates prevailing in the community for similar

services of lawyers of reasonably comparable skill, experience, and reputation."  <u>Cruz v. Local</u>

<u>Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing <u>Blum v. Stenson</u>, 465 U.S. 886,

894 (1984)).  "Courts have broad discretion to assess the reasonableness of each component of a

fee award."  <u>Jaramillo</u>, 2014 WL 2993450, at *8 (citing <u>Siemieniewicz v. CAZ Contracting</u>

<u>Corp.</u>, No. 11 CV 704, 2012 WL 5183375, at *15 (E.D.N.Y. Sept. 21, 2012), <u>adopted as</u>

<u>modified by</u> 2012 WL 5183000 (E.D.N.Y. Oct. 18, 2012)).

Here, plaintiff requests an hourly rate of $450 for attorney Russell Adler.  (Adler

Aff. ¶ 22.)  Mr. Adler has been practicing for approximately eighteen years, and specializes in

labor and employment law, including wage and hour matters.  (<u>Id.</u>)  However, the requested rate

is above the standard rate for similar cases in this district.  <u>See Ferrera v. Tire Shop Ctr.</u>, No. 14

CV 04657, 2016 WL 7626576, at *5 (E.D.N.Y. Oct. 14, 2016), adopted by 2017 WL 27946 (E.D.N.Y. Jan. 3, 2017) ("Judges in the Eastern District have awarded fees in the range of $300 to $400 per hour for experienced attorneys in FLSA cases.").  Based on my review of the rates awarded to attorneys of similar experience in wage and hour default cases, I respectfully recommend that Mr. Adler's hourly rate be reduced to $350.  See Perez v. Queens Boro Yang Cleaner, Inc., No. 14 CV 7310, 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), adopted sub nom. Perez v. Yang Cleaners, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016) (reducing the rate for an attorney with over eighteen years of experience in a wage and hour default from $400 to $350); Chopen, 2015 WL 1514390, at *14-15 (reducing fee for a solo practitioner with nineteen years of experience in an FLSA default case from $400 to $350, and noting both the size of his practice and the straightforward nature of the case); Hernandez v. Prof'l Maint. & Cleaning Contractors Inc., No. 13 CV 2875, 2015 WL 128020, at *8 (E.D.N.Y. Jan. 8, 2015) (reducing an experienced attorney's fee to $350 "in light of the default posture of this case and the mistakes noted in his damages calculations"); see also Encalada v. Baybridge Enterprises Ltd., 612 F. App'x 54 (2d Cir. 2015) (affirming district court decision that "survey[ed] attorneys' fees decisions in [the Eastern District of New York in] contested FLSA fee applications . . . , and found that the highest litigated reasonable rate in a simple FLSA case is $350") (alteration in original), cert. denied, 136 S. Ct. 1714 (2016).

ii.  Hours

A fee applicant bears the burden of supporting a claim of hours expended by accurate, detailed and contemporaneous time records.  See Carey, 711 F.2d at 1147-48.  The court must assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation.  See

Jaramillo, 2014 WL 2993450, at *9; Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  The court may exercise its discretion to make an across-the-board percentage reduction in the amount of hours awarded.  See In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) ("[T]he district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application.") (internal quotation marks and citation omitted); see also Demopoulos v. Sweet Clover Farms, Inc., No. 15 CV 6148, 2016 WL 8711717, at *18 (E.D.N.Y. Sept. 1, 2016), adopted by 2016 WL 8711136 (E.D.N.Y. Sept. 30, 2016) (collecting cases where courts made a percentage reduction in hours that were deemed excessive, redundant or otherwise unnecessary); Shim v. Millennium Grp., No. 08 CV 4022, 2010 WL 2772493, at *4 (E.D.N.Y. June 21, 2010), adopted by 2010 WL 2772342 (E.D.N.Y. July 12, 2010) ("A court has broad discretion to 'trim the fat' in an application for attorneys' fees, and to eliminate excessive or duplicative hours.") (citing Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d. Cir.1988); Carey, 711 F.2d at 1146–47).

As required, Mr. Adler has submitted contemporaneous billing records to support his fee application.  (See Att'y Time Records.)  The records reflect 56.3 hours of attorney time incurred meeting with the client, investigating the case, drafting and amending the complaint, corresponding with and responding to defendants (who initially defended the action), preparing for and attending an initial conference and damages hearing, corresponding with the court, and drafting multiple motions for default judgment.  (See id.)  However, some portion of the attorney time here was spent on work that would have been unnecessary had the original complaint properly pled an interstate commerce nexus and facts as to all defendants.  (See Order to Show Cause, dated Feb. 22, 2017.)  For example, the billing records reflect 2.2 hours spent preparing the third motion for default judgment (which reproduced, in large part, the second motion for

default judgment), four hours reviewing the order to show cause, preparing a response and discussing with plaintiff, and 1.1 hours reviewing and revising the motion to amend.  (See Att'y Time Records.)  Moreover, the billing records reflect a total of 8.5 hours spent preparing for and attending a relatively brief damages hearing.  (Id.)  I find these hours excessive and would reduce the total billable hours across the board by approximately twenty percent, entitling plaintiff to compensation for forty-five hours.  Accordingly, I respectfully recommend that plaintiff be awarded $15,750 in attorney's fees (45 hours x $350 per hour).

       iii.  Costs

Finally, plaintiff requests $1,184.30 in costs.  (See Adler Aff. ¶ 23.)  Both the FLSA and NYLL provide for recovery of costs.  29 U.S.C. § 216(b); N.Y. LAB. LAW § 663(1).  "[O]nly those costs that are tied to identifiable, out-of-pocket disbursements are recoverable." Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (internal quotation marks and citation omitted).  Plaintiff's costs consist of $42.90 for sending demand letters to defendants via Fedex prior to initiating this action, $400 for the court's filing fee, $270 for service of process on defendants on October 20, 2015, $188 for electronic research, $13.40 for postage and copying costs for the December 2015 default judgment motion, and $270 for service of process of the Amended Complaint on defendants on March 6, 2017.  With the exception of the fee for service of the Amended Complaint, these itemized costs are reasonable.  See Guallpa v. N.Y. Pro Signs Inc., No. 11 CV 3133, 2014 WL 2200393, at *12 (S.D.N.Y. May 27, 2014), adopted sub nom. Guallpa v. NY Pro Signs Inc., 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014) (awarding costs including legal research, express mail, postage and copying fees).  While court filing and service fees are routinely recoverable, see Jaramillo, 2016 WL 2993450, at *9, the service of the Amended Complaint here was only necessary due to deficiencies in the first complaint.  (See

26

Order to Show Cause, dated Feb. 22, 2017.)  Therefore, I respectfully recommend that plaintiff be awarded $914.30 in costs, which excludes service fees for the Amended Complaint.

CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted in part and that default judgments be entered against defendants Masada III Transportation and Masada III.  However, I recommend that plaintiff's motion be denied with respect to Masada III Car & Limo.  Regarding damages, I recommend that plaintiff be awarded $9,254.60, consisting of $2,902.30 in unpaid overtime compensation, $1,150 in statutory penalties for wage notice violations, $2,300 in statutory penalties for wage statement violations, and $2,902.30 in liquidated damages under state law.  I further recommend that plaintiff be awarded prejudgment interest on his compensatory damages of $2,902.30 at a rate of nine percent per annum from November 2, 2014 to the date that judgment is entered, as well as post-judgment interest.  Finally, I respectfully recommend that plaintiff be awarded $15,750 in attorney's fees and $914.30 in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Matsumoto and to my chambers, within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,

_____/s/_____

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
        July 24, 2017